IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES JACKSON,<br>     Plaintiff | :<br>:<br>: |
| v. | : CIVIL NO. 1:11-CV-1135 |
| SCI-CAMP HILL, *et al.*,<br>     Defendants | :<br>:<br>: |

*M E M O R A N D U M*

I.  *Introduction*

The pro se plaintiff, Charles Jackson, filed this civil-rights action while he was a Pennsylvania inmate confined at SCI-Camp Hill in Camp Hill, Pennsylvania. Plaintiff was serving a five- to ten-year sentence on several convictions imposed in 2007 in the Court of Common Pleas of Allegheny County, Pennsylvania.[1]  He has sued to recover $488.15 in court costs he alleges were illegally deducted from his inmate account, in part, as a violation of his Fourth Amendment right against an unreasonable seizure and his Fourteenth Amendment right to procedural due process.  Named as defendants are the "Corrections Defendants": SCI-Camp Hill; the Pennsylvania Department of Corrections (DOC); and Robert Gimble, a business manager at Camp Hill. Allegheny County, Pennsylvania, is also a defendant.  We are considering two motions to dismiss, one filed by the Corrections Defendants, and the other by Allegheny County.

---

[1] Plaintiff has since been released.

II.  *Standard of Review*

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010) (quoted case omitted).  The court is not limited to evaluating the complaint alone; it can also consider documents attached to the complaint, matters of public record, indisputably authentic documents, *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006), documents that form the basis of a claim, *Lum v. Bank of America,* 361 F.3d 217, 221 n.3 (3d Cir. 2004), and "documents whose contents are alleged in the complaint and whose authenticity no party questions," even though they "are not physically attached to the pleading . . . ." *Pryor v. Nat'l Collegiate Athletic Ass'n,* 288 F.3d 548, 560 (3d Cir. 2002).

III.  *Background*

Plaintiff started this lawsuit by filing his original complaint on June 15, 2011.  In pertinent part, his amended complaint alleges as follows.  Plaintiff was sentenced on December 6, 2007, to five to ten years' imprisonment, without the imposition of court costs or fines.  (Doc. 26, Am. Compl. ¶ 1, ECF p. 1,; doc. 26-1, ECF p. 1, sentencing order).  The sentencing order imposed the "prosecution" costs on Allegheny County.  (Doc. 26-1, ECF p. 1, sentencing order).  Nonetheless, SCI-Camp Hill and Gimble "fraudulently deducted 20% of his income [from his inmate account] over several years,

claiming that it was for court costs" under Act 84, "knowing all of the time that" the sentencing order required Allegheny County to pay the court costs. (Doc. 26, Am. Compl. ¶ 4, ECF p. 1).[2] These deductions began on December 12, 2007. (*Id.*, ¶ 2, ECF p. 9). Further, Allegheny County accepted payment of these deduction from SCI-Camp Hill even though it knew the funds were obtained fraudulently and was a "willing participant" in that "fraudulent activity." (*Id.* ¶ 21, ECF p. 4).

Although the sentencing order imposed no costs on Plaintiff, a "commitment order" prepared on the same day by a clerk in the then office of the Clerk of Courts for Allegheny County did indicate Plaintiff was obligated to pay costs in the amount of $677.85. (Doc. 29, ECF p. 3).[3] The commitment order was fraudulent. (Doc. 26, Am. Compl. ¶ 1, ECF p. 9). After Plaintiff sent Camp Hill officials a copy of his sentencing order in March 2010, (*Id.* ¶¶ 5 and 8, ECF p. 2; doc. 26-1, ECF p. 5), the prison stopped the deductions, (Doc. 26, Am. Compl. ¶ 6), which by that time totaled $488.15.

Plaintiff attempted to obtain a refund of the $488.15 by using the prison grievance system, beginning with a series of grievances on March 29, 2010, and culminating with a grievance filed with SCI-Camp Hill's superintendent. (Doc. 26-1, ECF

---

[2] Act 84 is 42 Pa. Con. Stat. Ann. § 9728. In pertinent part, section 9728(b)(5) authorizes the DOC "to make monetary deductions from inmate personal accounts for the purpose of restitution or any other court-ordered obligation . . . ." Deductions are supposed to be sent to the County. *Id.*

[3] A "commitment order" is not an order signed by a judge but a "DC-300B" form filled out by a clerk after sentence has been imposed which, in part, describes the offense of conviction, the sentence, and any fines, costs, or restitution imposed.

pp. 5-23). He was unsuccessful, although on March 21, 2011, in response to his grievance appeal, Camp Hill's superintendent agreed with him that he was owed the money and that the matter would be referred to Allegheny County "since they now have the funds." (Doc. 26-1, ECF p. 23).[4] The superintendent's response echoed advice Plaintiff received from other prison officials that he contact Allegheny County about the erroneous payments. (Doc. 26, Am. Compl. ¶¶ 9 and 13, ECF pp. 2-3; doc. 26-1, ECF p. 10).

Pursuant to 42 U.S.C. § 1983, Plaintiff sets forth two federal civil rights claims: (1) a Fourteenth Amendment procedural due process claim asserting he was not given notice and opportunity to respond before the deductions were made from his inmate account; and (2) a Fourth Amendment claim for the seizure of the money. Plaintiff also makes a state-law claim for fraud.[5] He seeks compensatory and punitive damages.

---

[4] Plaintiff did subsequently submit an inmate request form to a Camp Hill official on March 23, 2011, seeking information on the checks sent to Allegheny County. (Doc. 26-1, ECF p. 27).

[5] Plaintiff also mentions theft by deception, but we consider that merely a restatement of his fraud claim.

IV.  *Discussion*

A. *The Statute of Limitations Bars the Due Process Claim But Not the Fourth Amendment Seizure Claim*

Both motions argue that the federal claims should be dismissed on the basis of the statute of limitations. The statute of limitations for section 1983 claims arising in Pennsylvania is two years. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). The Correctional Defendants and Allegheny County argue that the federal claims are untimely because Plaintiff alleges the deductions began on December 12, 2007, giving Plaintiff until December 12, 2009, to file suit, but Plaintiff did not do so until June 15, 2011, about seven months after the statute of limitations expired. In support of this analysis, they cite *Greer v. DiGuglielmo*, No. 08-1110, 2009 WL 812715 (E.D. Pa. Mar. 25, 2009), *aff'd*, 348 F. App'x 702 (3d Cir. 2009) (nonprecedential). In *Greer*, the court ruled, and was upheld on appeal, that a civil-rights complaint about Act 84 deductions was untimely when the plaintiff's complaint alleged that he had learned about the deductions on September 2, 2002, but did not file suit until some three and one-half years after the two-year limitations period expired. 2009 WL 812715, at *2.

In opposition, Plaintiff makes two arguments. First, the lawsuit is timely because the statute runs from "when the plaintiff knew or should have known of the injury upon which [his] action is based." *Kach*, *supra*, 589 F.3d at 634 (brackets added) (quoting *Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998); *Williams v. Prison Health Sys.*, 470 F. App'x 59, 61 (3d Cir. 2012)

(nonprecedential) ("A § 1983 cause of action accrues on the date when a plaintiff knew or should have known his rights had been violated."). For Plaintiff, this would be the day in March 2010 when he discovered that the sentencing order did not impose any court costs on him. His lawsuit is thus timely because he filed it on June 15, 2011, well before the expiration of the limitations period in March 2012. Second, Plaintiff argues that the statute should be tolled until March 2010 because the defendants committed fraud with the commitment order and in the exercise of reasonable diligence, he could only have discovered this fraud in March 2010. *See Koehnke v. City of McKeesport*, 350 F. App'x 720, 723-24 (3d Cir. 2009) (nonprecedential) (applying Pennsylvania's discovery rule that allows tolling of the statute of limitations until the plaintiff, through no fault of his own, discovers his injury as long as the plaintiff shows "reasonable diligence in determining the existence and cause of his injury) (quoted case omitted). As against Allegheny County's motion, Plaintiff specifically argues Defendants engaged in fraudulent concealment. *See Mest v. Cabot Corp.*, 449 F.3d 502, 516 (3d Cir. 2006) ("Pennsylvania's fraudulent concealment doctrine tolls the statute of limitations where 'through fraud or concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry.'") (quoted case omitted). With the statute tolled until March 2010, the lawsuit is again timely when filed on June 15, 2011.

We conclude that the procedural due process claim is time-barred. There could not have been any fraud or concealment in regard to this claim, nor can Plaintiff argue he could not have known about this claim before March 2010. Plaintiff makes no

argument that he did not know about the deductions when they began on December 12, 2007, or shortly thereafter, and he certainly would also have been aware at the same time that he had received no predeprivation hearing beforehand. The due process claim is therefore untimely as the lawsuit was filed about seven months after the statute of limitations expired.

We reach a different conclusion on the Fourth Amendment claim. On this claim, we do have to consider Plaintiff's allegation that the commitment order was fraudulent. The Fourth Amendment protects against unreasonable searches and seizures. *Free Speech Coalition, Inc. v. Attorney General*, 677 F.3d 519, 542 (3d Cir. 2012). If the commitment order provided fraudulent information about court costs, Plaintiff may not have had reason to know that the deduction from his inmate account was not reasonable. We therefore cannot dismiss the Fourth Amendment claim on the basis of the statute of limitations.

> B. *Failure to Exhaust Administrative Remedies Does Not Bar the federal Claims*

A prisoner has to exhaust all "available" administrative remedies before filing suit on a section 1983 claim based on "prison conditions." 42 U.S.C.A. § 1992e(a). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 991, 152 L.Ed.2d 12, 26 (2002). Exhaustion must be "proper," meaning the inmate must

comply with all the procedural steps the state requires, including deadlines. *Woodford v. Ngo,* 548 U.S. 81, 90–91, 93, 126 S.Ct. 2378, 2385–86, 2387, 165 L.Ed.2d 368 (2006).

Defendant Allegheny County argues the federal causes of action must be dismissed because Plaintiff only exhausted his claim for a refund up to the level of Camp Hill's superintendent, citing *Rivers v. Wirt*, No. 04-2817, 2005 WL 3115297, at *2 (M.D. Pa. Nov. 21, 2005). In *Rivers*, the court noted that the DOC's grievance procedures permitted an inmate to bring an appeal from the superintendent to the DOC's Office of Inmate grievances and Appeals.

We reject this argument because, as Plaintiff notes, the superintendent's March 21, 2011, response to his appeal was to agree with Plaintiff and to refer the matter to Allegheny County since the County had the funds SCI-Camp Hill had deducted from Plaintiff's account. (Doc. 26-1, ECF 23). We decline to dismiss this action of the basis of a failure to exhaust administrative remedies when the inmate would have no apparent reason to appeal further.

> C. *The Federal Claims Against SCI-Camp Hill and the DOC Will Be Dismissed Because the Eleventh Amendment Bars Suit Against Them and Because They Are Not Persons Within the Meaning of Section 1983*

The Correctional Defendants move to dismiss the federal claims against SCI-Camp Hill and the DOC because the Eleventh Amendment bars suit against them and because they are not persons within the meaning of Section 1983. We agree with both arguments and will dismiss these defendants. *See Pettaway v. SCI Albion*, ___ F. App'x ___, ___, 2012 WL 1850919, at *2 (3d Cir. 2012) (nonprecedential) (the Eleventh

Amendment bars suit against the Pennsylvania Department of Corrections and SCI-Albion and these entities are also not "persons" subject to suit under section 1983).

> D. *Plaintiff Fails to State Federal Claims Against Allegheny County Because He Does Not Plead the County Had a Policy or Custom That Caused His Injury*

A municipality, like Allegheny County, cannot be liable on a civil-rights claim under *respondeat superior,* only for a policy or custom that caused injury to Plaintiff. *Watson v. Abington Twp.,* 478 F.3d 144, 155 (3d Cir. 2007). Allegheny County moves to dismiss the federal claims against it because Plaintiff has not alleged that his injury was caused by a County policy or custom. In opposition, Plaintiff argues he can pursue his claims because they are based on fraud, the fraudulent commitment order, prepared by the clerk who signed it, alleged to be an agent of the County.

We agree with the County. It is immaterial that Plaintiff is alleging fraud in connection with his claims. Since Plaintiff makes no attempt to allege a County policy or custom, and indeed appears to be basing his claim on respondeat superior, given his reference to the clerk as agent, we will dismiss the federal claims against Allegheny County.

> E. *Plaintiff Has No Fourth Amendment Claim Against Gimble Because the Fourth Amendment Does Not Extend to an Inmate's Financial Account*

Allegheny County has argued that Plaintiff has no Fourth Amendment rights in connection with his inmate account so he cannot complain about the deductions from

his account as unreasonable seizures. *See Free Speech Coalition, Inc., supra,* 677 F.3d 519 at 542 (Fourth Amendment protects against unreasonable seizures). We will apply this argument to the Fourth Amendment claim against Gimble.

In support, the County cites *Dantzler v. Beard*, No. 05-1143, 2007 WL 44208, at *4 (W.D. Pa. Jan. 5, 2007), where the court held that the Fourth Amendment did not protect the inmate plaintiff from seizure of his grievance forms because the Fourth Amendment does not apply in the prison context. In part, *Dantzler* relied on *Doe v. Delie*, 257 F.3d 309 (3d Cir. 2001), and *Taylor v. Knapp*, 871 F.2d 803 (9th Cir. 1989).

As we understand Plaintiff's counter-argument, Plaintiff contends that cases dealing with searches of prison cells have no bearing on an illegal seizure based on fraud. Plaintiff's distinction based on fraud is immaterial. The bigger difficulty with Defendant's argument is that while it is true that a prisoner has no Fourth Amendment protection against searches or seizures involving his cell, *Doe*, 257 F.3d at 316, we deal here with seizures from an inmate's financial account. The Fourth Amendment is not extended to prison cells for security reasons. *Id.* Those reasons do not apply to a monetary account the inmate has no control over. So Defendant's citation of *Dantzler* is not helpful to its argument.

Nonetheless, we agree with Allegheny County that Plaintiff has no Fourth Amendment rights in his prison financial account. We follow *Taylor* in reaching that conclusion. In *Taylor*, an inmate made a Fourth Amendment claim alleging that the defendant prison officials had "unlawfully seized and converted money and assets

-10-

belonging to the Lifers Club for their own personal use." 871 F.2d at 804. "The Lifers Club, Inc., [was] a nonprofit, nonstock corporation formed by five prison inmates . . . allegedly as a service organization for fellow inmates." *Id.* The plaintiff had no due-process claim because he had available postdeprivation remedies, even when the claim was for an intentional, unauthorized seizure, *id.* at 806 (citing *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 3204, 82 L.Ed.2d 393 (1984)), but he argued he had a Fourth Amendment claim, which the Ninth Circuit recognized was not controlled by the Supreme Court's Fourteenth Amendment law dealing with inmates' property rights.

Rejecting the Fourth Amendment claim, the court of appeals extended the Supreme Court's Fourth Amendment prison-cell jurisprudence to inmates' financial accounts. The court reasoned as follows:

> Lawful incarceration necessarily entails limitations upon many of the rights enjoyed by ordinary citizens. *Hudson* [v. Palmer, 468 U.S. 517, 524, 104 S.Ct. 3194, 3199, 82 L.Ed.2d 33 (1984)]; *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). An inmate's fourth amendment rights are among the rights subject to curtailment. In particular, the fourth amendment does not protect an inmate from the seizure and destruction of his property. *Hudson, supra,* 468 U.S. at 528 n.8, 104 S.Ct. at 2808 n. 8. Hence it cannot protect an inmate from the conversion of his property. *See id.* at 537-40, 104 S.Ct. at 3205-07 (O'Connor, J, concurring) (because prison officials are authorized indefinitely to dispossess inmates of their property, what happens to the property while in official custody is not a Fourth Amendment concern). This does not mean a prisoner is without redress; it simply means a prisoner's form of redress is through the fifth and fourteenth amendments. *Id.* at 540, 104 S.Ct. at 3207.

*Id.* at 806.

-11-

Other courts have also refused to recognize an inmate's claim that the seizure of money from his inmate account violated the Fourth Amendment. *Harper v. Oldham Cnty. Jail*, No. 10-CV-P735-S, 2011 WL 1399771, at *5 (W.D. Ky. April 13, 2011) (no Fourth Amendment claim for deductions from the inmate plaintiff's account to pay a $30 per day fee while he was in jail); *Thieleman v. Cnty. of Arkansas*, No. CC-08-78, 2010 WL 610651, at *5 (S.D. Tex. Feb. 17, 2010) (no Fourth Amendment claim for deductions from an inmate account to pay for court costs, leaving the plaintiff to the protection of procedural due process, and adopting the magistrate judge's recommendation under a clear-error standard of review); *Smith v. Dennison*, No. 09-0057, 2010 WL 1883479, at *4 (W.D. Ky. May 11, 2010) (no Fourth Amendment claim for a deduction from an inmate's account for hygiene items); *Gardner v. Rogers State Prison*, No. CV-608-016, 2009 WL 29572, at *5 (S.D. Ga. Jan. 5, 2009) (no Fourth Amendment claim for $1.00 allegedly taken by the defendant warden from the plaintiff's inmate reserve balance account); *Hentz v. Ceniga*, No. 08-157, 2009 WL 536846, at *10 (D. Or. Mar. 3, 2009) (no Fourth Amendment claim for money temporarily frozen in an inmate's trust account), *aff'd*, 402 F. App'x 214 (9th Cir. 2010) (nonprecedential); *Drakeford v. Thompson*, No. 09-2239, 2010 WL 4884897, at *4 (D.S.C. Nov. 24, 2010) (no Fourth Amendment claim for money temporarily frozen in an inmate's trust account) (following *Hentz*).

We will therefore dismiss the Fourth Amendment claim against Gimble.

> F. *Gimble is Entitled to Qualified Immunity on The Federal Claims Against Him*

We have already decided that the procedural due process claim is time-barred. The Correctional Defendants also argue that qualified immunity bars the Fourteenth Amendment claim against Gimble. We agree that this is an additional reason why the claim must be dismissed. Qualified immunity also bars the Fourth Amendment claim against Gimble even if we were mistaken in concluding that the Fourth Amendment does not extend to Plaintiff's inmate account.

Qualified immunity "shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd,* ___ U.S. ___, ___, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011). For a right to be clearly established, its "contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). The unlawfulness must be "apparent." *Id.* Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *al-Kidd,* 131 S.Ct. at 2085 (citation omitted).

On the procedural due process claim, the right to a predeprivation hearing before Act 84 deductions can be made has not been clearly established. We need only look at two cases from the Third Circuit to establish the uncertainty. In *Montanez v. Beard*, 344 F. App'x 833 (3d Cir. 2009) (nonprecedential), a panel of the Third Circuit

-13-

rejected the argument that Act 84 deductions by DOC officials did not violate due process as long as there was a postdeprivation remedy. *Id.* at 834-35 (citing *Hale v. Beard*, 168 F. App'x 532, 534 (3d Cir. 2006) (nonprecedential)).  However, in *Pettaway, supra,* another panel of the Third Circuit later decided that due process was satisfied by a postdeprivation remedy, the inmate grievance procedure. ___ F. App'x at ___, 2012 WL 1850919, at *2.  Moreover, before the deductions in this case occurred, the Pennsylvania Supreme Court had held in *Buck v. Beard*, 583 Pa. 431, 879 A.2d 157 (2005), that due process was satisfied by the opportunity presented by the sentencing hearing, where the inmate could be heard on any fines, costs or restitution to be imposed on him. *Id.* at 436, 879 A.2d at 160; *see also Montanez*, 344 F. App'x at 835 (discussing *Buck*).

On the Fourth Amendment claim, the right would not have been clearly established as the cases actually hold that the Fourth Amendment does not apply to an inmate's financial account.  Any inmate rights in this area could also have been perceived by a prison official as being governed by the due process clause.  See Taylor, supra, 871 F.2d at 806 (in rejecting a Fourth Amendment claim, noting that "a prisoner's form of redress is through the fifth and fourteenth amendments").

The defense of qualified immunity therefore applies to the Fourteenth Amendment due process claim and the Fourth Amendment claim against Gimble.

G. *The DOC, Gimble, and Allegheny County Are Entitled to Immunity Under State Law on The Fraud Claim*

The Corrections Defendants, DOC and Gimble, argue that the state-law fraud claim fails to state a claim and that, in any event, they are immune from suit on the claim by virtue of sovereign immunity. Plaintiff counters that fraud is an intentional tort and that the defendants cannot be immune for an intentional tort.

Plaintiff is incorrect. State law immunizes the DOC and Gimble, as Commonwealth parties, from intentional torts. *See Williams v. Stickman*, 917 A.2d 915, 917 (Pa. Commw. Ct. 2007) (quoting *La Frankie v. Miklich*, 152 Pa. Commw. Ct. 163, 170, 618 A.2d 1145, 1149 (1992) (en banc)). For a Commonwealth employee to have immunity, he must have been acting within the scope of his employment, 42 Pa. Con. Stat. Ann. § 8501, and Gimble was acting within the scope of his employment as Plaintiff alleges Gimble, a business manager at SCI-Camp Hill, transferred money from Plaintiff's inmate account to Allegheny County, supposedly to pay for court costs.

Allegheny County is also immune from suit as local governments are also immune from liability for the intentional torts of its employees. *Udujih v. City of Philadelphia*, 513 F. Supp. 2d 350, 358 (E.D. Pa. 2007).

H. *The Proposed Second Amended Complaint Fails to Raise Meritorious Claims*

Plaintiff had filed a motion to file a second amended complaint so that he could assert claims relying on the following: (1) the public function test for determining whether the conduct of private individuals satisfies the state-action requirement of

-15-

section 1983, *see Max v. Republican Comm. of Lancaster Cnty.*, 587 F.3d 198, 200 (3d Cir. 2009); (2) the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. Con. Stat. Ann. §§ 5101-5110; and (3) the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680.

On October 26, 2011, we denied the motion but did so without prejudice pending resolution of the motions to dismiss. Since we have decided that those motions have merit, we will consider whether Plaintiff should be allowed to file a second amended complaint raising these three grounds.

We will not allow a second amended complaint because it would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002). The public function test does not apply here because there is no question there was state action, only whether Plaintiff could state a section 1983 claim. The Pennsylvania Uniform Fraudulent Transfer Act applies to "debtors" attempting to defraud their creditors by transferring assets. 12 Pa. Con. Stat. Ann. §§ 5104(a). Defendants are not Plaintiff's debtors. Finally, the Federal Tort Claims Act applies only to the United States and cannot be used as a basis to impose liability on a state or local government for the actions of its employees.

V.   *Conclusion*

We will grant both motions to dismiss. Plaintiff therefore has no remedy in this court. However, it appears that Plaintiff could have sought recovery of his funds from the County by a petition for a writ of mandamus filed in his criminal proceedings in Allegheny County. *See Commonwealth v. Williams*, 909 A.2d 419, 421-22 (Pa. Commw.

Ct. 2006).  He might also have challenged the DOC's deductions by filing a petition for review in the commonwealth court.  *See Saxberg v. Pennsylvania Dep't of Corr.*, 42 A.3d 1210, 1213 (Pa. Commw. Ct. 2012).

                                            /s/ William W. Caldwell
                                           William W. Caldwell
                                           United States District Judge

Date: September 11, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES JACKSON,                     :
    Plaintiff                            :
                                           :
  v.                                   :   CIVIL NO. 1:11-CV-1135
                                           :
SCI-CAMP HILL, *et al.*,             :
    Defendants                           :

*O R D E R*

AND NOW, this 11th day of September, 2012, it is ORDERED that:

  1. The motion (Doc. 27) to dismiss Plaintiff's amended complaint filed by the "Corrections Defendants": SCI-Camp Hill; the Pennsylvania Department of Corrections; and Robert Gimble, is GRANTED.

  2. The motion (Doc. 36) to dismiss Plaintiff's amended complaint filed by defendant, Allegheny County, is GRANTED.

  3. The Clerk of Court shall close this file.

                                      /s/ William W. Caldwell
                                      William W. Caldwell
                                      United States District Judge